UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | CHAPTER 12 |
| ) | BANKRUPTCY NO. 09-02352S |
| CROOKED CREEK CORP., ) | |
| ) | |
| Debtor. ) | |
| ) | |
| CROOKED CREEK CORP., ) | |
| ) | ADVERSARY NO. 09-9093S |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PRIMEBANK and ) | |
| OYENS FEED & SUPPLY INC ) | |
| ) | |
| Defendants. ) | |

## ORDER ON MOTION TO COMPEL AND CROSS-MOTION TO PROTECT

This discovery dispute came before the court on Oyens Feed and Supply, Inc. ("Oyens") Motion to Compel Primebank to Answer Interrogatories and Satisfy Requests for Production. Primebank filed a Cross-Motion for Protective Order. Joel Voss represented Oyens. Scott Sandberg represented Primebank. The Court held a telephonic hearing. Following the hearing the Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

### STATEMENT OF THE CASE

Oyens and Primebank are each creditors of Debtor Crooked Creek, a hog

1

production operation which filed for bankruptcy on August 18, 2009. Oyens is a feed supplier. Primebank is a traditional financer. Primebank secured its financing to Debtor in 1997 with a standard Article 9 "blanket lien." The Blanket lien included an interest in the Debtor's hogs. Primebank renewed the interest in 2007. Oyens claimed a statutory lien on the basis of Iowa Code 570A, which gives priority status to agricultural feed suppliers. Crooked Creek filed this adversary proceeding in order to resolve lien priority.

    The Iowa Supreme Court answered a certified question of law resolving a conflict between these liens in the statutory structure. It determined that Primebank's lien was superior insofar as it covered the purchase price of the hogs, but that Oyens had priority on increases in the hogs' value from acquisition price to final sale. Oyens Feed & Supply Co. v. Primebank, 808 N.W.2d 186, 194 (Iowa 2011). The hogs were sold prior to the Iowa Supreme Court's ruling and the cash deposited in escrow. This Court permitted this cash collateral to be used up to the amount of Oyens' lien value of $358,841.10. Primebank's claim against Crooked Creek for the hog acquisition is $1.1 million. The available cash in the account does not cover Primebank's lien in the hogs' acquisition value. Crooked Creek is not the only party with obligations to Primebank. Rick and Marian Langel, the president of Crooked Creek and his wife, personally guaranteed Crooked Creek's obligation to Primebank. Oyens believes land records show the Langels undertook

2

mortgage and sales activity as part of their guarantee of Crooked Creek's debt to Primebank.

As part of this lien priority dispute, Oyens submitted interrogatories and requests for production. After Primebank declined to answer interrogatories 5, 7, 8, 9, and 10, Oyens moved to compel Primebank to answer, and Primebank made a cross-motion for protection. Oyens also moves to compel production of documents related to its interrogatories.

## CONCLUSIONS OF LAW

"The rules for discovery 'are to be accorded broad and liberal treatment.'" Credit Lyonnais, S.A. v. SGC Int'l Inc., 160 F.3d 428, 430 (8th Cir. 1998) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). "The purpose of our modern discovery procedure is to narrow the issues, to eliminate surprise, and to achieve substantial justice." Mawby v. U.S., 999 F.2d 1252, 1254 (8th Cir. 1993) (quoting Greyhound Lines, Inc. v. Miller, 402 F.2d 134, 143 (8th Cir. 1968)). "For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b); Fed. R. Bankr. P. 7026. Yet, "the court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c); Fed. R. Bankr. P. 7026.

Of particular help in this discovery dispute are two facets of law.  First, that Oyens' lien is superior relative only to any increase in value over the acquisition price, and second, that "a creditor cannot collect more, in total, than the amount it is owed."  <u>Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown P.C.</u>, 692 F.3d 283, 295 (3d Cir. 2012) (citing <u>Bd. of Comm'rs v. Hurley</u>, 169 F. 92, 97 (8th Cir. 1909)).

**I.    Interrogatory 5**

Interrogatory number 5 has numerous subparts:

> For each group or lot of livestock owned by the Debtor . . .
>     (a) State each Lot number or other identifying characteristic;
>     (b) . . . state the date the Debtor acquired an interest . . .
>     (c) . . . [same as b]
>     (d) . . . state your contention of the acquisition price . . .
>     (e) . . . state the basis for and how you calculated the Debtor's
>           acquisition price . . .
>     (f) . . . state your contention of the sales price . . .
>     (g) . . . state the basis for and how you calculated the sales price . . .

(Def.'s Mot. to Compel, ECF Doc. No. 69, at 11.)  Primebank originally served this same interrogatory on Oyens.  Oyens responded and served the same interrogatory back to Primebank.  The interrogatory inquiries into the details of the transactions involving the hogs.

The different and more general nature of Primebank's lien means that this interrogatory—while reasonable for Primebank to ask—is not reasonable for Primebank to answer.  While Oyens' lien is vindicated only after intensive inquiry

4

into livestock purchase date, acquisition price, sale proceeds, and use of feed, Primebank's lien is a wide-ranging, inclusive, Article 9 "blanket." Primebank claims that it does not possess the particular information Oyens' requests because its blanket lien did not give Primebank such need for careful inquiry into the details of Crooked Creek's livestock transactions. The Oyens' 570A lien does require the inquiry that Primebank did not need to undertake. Oyens' Motion to Compel answers on Interrogatory 5 is denied because it places an undue burden on Primebank to produce information to which it does not have reasonable access.

## II. Interrogatories 7 and 8

Interrogatories 7 and 8 request information on Primebank's dealings with guarantors:

> 7. State whether Primebank has taken any action to enforce any personal guarantees of the Debtor's debt . . . by Ricke and/or Marian Langel, or has received any payment from Ricke and/or Marian Langel of any debt owed Primebank by the Debtor. If Primebank has received any payment . . . state the date . . . and the amount . . . .
>
> 8. State whether Primebank has extended credit to Rick Langel and/or Marian Langel subsequent to the filing of the . . . bankruptcy in order to allow Ricke Langel and/or Marian Langel to pay amounts owed by Ricke Lagel on their personal guarantees . . . . If yes, state the date of extension of credit and the amount . . . .

(Def.'s Mot. to Compel, ECF No. 69, at 13–14.) As Primebank is not entitled to more than its claimed amount, any payment by guarantors would reduce the

5

allowed amount Primebank may recover from the estate, and perhaps even satisfy the lien. Because Primebank would be the recipient of such payments, it should have no trouble in providing this relevant information. Oyens' Motion to Compel answers on Interrogatories 7 and 8 is granted due to the relevance of the requested information on Oyens' and Primebank's competing liens and their relative priority.

### III. Interrogatory 9

Interrogatory 9 asks Primebank to describe facts which lead Primebank to believe Oyens' lien was not adequately perfected:

> 9. If you claim that the financing statements filed by Oyens Feed failed to perfect the Chapter 570A agricultural supply dealers' lien of Oyens Feed, state each and every way in which you claim the financing statements were defective.

(Def.'s Mot. to Compel, ECF No. 69, at 15.) Primebank responded to this request, and Oyens has not clearly described how it was deficient. On its face, it is not obvious how Primebank's response was non-exhaustive, nor does Oyens describe what else it has reason to believe Primebank could additionally supply. Oyens Motion to Compel an answer on Interrogatory 9 is denied for failing to state cause.

### IV. Interrogatory 10

Interrogatory 10 asks for the amount Crooked Creek owed to Primebank and account activity which followed after the Chapter 12 petition:

> 10. State the amount Crooked Creek owed to Primebank as of the date of the filing of the Chapter 12 bankruptcy. State the amount owed, if any, by Crooked Creek to Primebank. Identify all credits and debits

6

      made to the Crooked Creek account since the filing of the Chapter 12 bankruptcy by date and amount.

(Def.'s Mot. to Compel, ECF No. 69, at 16.)

      Unlike the acquisition price of hogs, Primebank should have this information about its relationship with the Debtor available. The potential impact of debits and credits made between Debtor and Primebank on the amount of Primebank's claim—and how the value of Primebank's claim affects Oyens' claim—is clear. The Court grants Oyens' Motion to Compel on Interrogatory 10 due to its relevance to Primebank's claim and potential relevance to Oyens' claim.

## V. Request for Production

      Primebank has not resisted Oyens' requests for production in its brief and advances no rationale why the requests should be denied. However, Production Requests 3 and 4 relate to Interrogatory 5 (acquisition/sale price) and are unreasonable for Primebank to provide. All other Requests for Production are relevant and are related to uncontested interrogatories or those to which the Court has compelled a response. As such, Oyens' Motion to Compel Production is denied regarding Requests 3 and 4 and granted in all other parts.

**WHEREFORE,** for the foregoing reasons, Oyens' Motion to Compel and Primebank's Motion for Protection are **GRANTED** and **DENIED** in part.

Dated and Entered:
March 28, 2013

_____
**THAD J. COLLINS, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT**